# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**David Ulitsch**

    v.                                  Case No. 24-cv-00074-PB
                                                  Opinion No. 2025 DNH 029

**U.S. Social Security Administration,**
**Commissioner**

## MEMORANDUM AND ORDER

David Ulitsch challenges the denial of his application for disability insurance benefits pursuant to 42 U.S.C. § 405(g). He argues that the Administrative Law Judge (ALJ) who found him not disabled failed to explain her reliance on a vocational expert's testimony in finding that Ulitsch had a light work Residual Functional Capacity (RFC). The Commissioner, in turn, moves for an order affirming the ALJ's decision. For the following reasons, I conclude that the ALJ's decision that Ulitsch was not disabled is supported by substantial evidence. I therefore affirm the Commissioner's decision and deny Ulitsch's motion to reverse.

# I.  BACKGROUND[1]

## A.    Procedural Facts

This is Ulitsch's third appearance before this Court requesting a review of an ALJ decision on his disability status. See Doc. 6-1 at 1. He originally applied for Title II Social Security Disability Insurance Benefits on August 14, 2016, with an alleged disability onset date of February 3, 2014. Tr. at 12, 165-81. He holds a GED and had worked as an electric meter installer and electrician before suffering a lower back injury from lifting a piece of heavy equipment. Tr. at 1649-51.

Ulitsch's application was initially denied. Tr. at 79-80. In September 2017, he testified at a hearing before ALJ Edward Malvey, Tr. at 27-58, who ultimately denied his application. Tr. at 14-22. Following an unsuccessful appeal to the Appeals Council, Ulitsch filed an appeal in this Court. See Ulitsch v. Comm'r of U.S. Soc. Sec. Admin., No. 18-cv-694-JL, 2019 WL 4686776 (D.N.H. Sept. 26, 2019).[2]

---

[1]    The parties have submitted statements of material facts as required by Local Rule 9.1(b), and I draw on the entire administrative record ("Tr.") to construct a brief factual history of Ulitsch's case.

[2]    The Court (Judge Laplante) vacated ALJ Malvey's unfavorable decision and remanded the case for further proceedings. Ulitsch, 2019 WL 4686776, at *5. Remand was warranted, the court reasoned, because the ALJ had failed

In the meantime, Ulitsch filed a subsequent application for disability insurance benefits in August 2018. Tr. at 668, 689. He was found disabled for purposes of supplemental security income (SSI) as of August 31, 2018, based on Medical-Vocational Rule 201.06, which applies to individuals of advanced age. Tr. at 686-87. Following the remand from this Court, the Appeals Council vacated ALJ Malvey's initial decision and remanded the claim for further proceedings. Tr. at 708. The Appeals Council affirmed the Agency's finding that Ulitsch was disabled as of August 31, 2018, and instructed the ALJ to adjudicate whether he was disabled during the four-and-a-half-year period between February 3, 2014, the alleged onset date, and August 31, 2018. Id.

A hearing was held in July 2020 before ALJ Malvey on the consolidated claims. Tr. at 637-66. A different vocational expert witness appeared and testified at the hearing. Id. The ALJ issued an unfavorable decision the following month, finding that Ulitsch had not been disabled during the relevant period. Tr. at 614-36. The Appeals Council declined to review the

---

to adequately assess the impact of Ulitsch's stand/walk limitation on the occupational base. Id. at *1. The court noted that the vocational expert's testimony "did not specifically explain the impact of Ulitsch's two-hour standing/walking limitation on potential jobs existing in the national economy" and that the record did not "clearly state what methodology the expert used, if any, to account for Ulitsch's RFC and his limitations." Id.

decision, Tr. at 608-13, and Ulitsch filed an appeal in this Court. See Compl., Ulitsch v. Kijakazi, No. 22-cv-00267-SE (D.N.H. July 20, 2022), Doc. 1. The case was subsequently remanded by stipulation of the parties, and the Appeals Council remanded the claim to a new ALJ with specific instructions to consider a post-hearing affidavit provided by a vocational expert. Tr. at 1712.

Following Ulitsch's third administrative hearing, presided over by ALJ Tracy LaChance on April 5, 2023, the ALJ issued an unfavorable decision in November 2023, finding that Ulitsch was not disabled between February 3, 2014, and August 31, 2018. Tr. at 1616-41. Ulitsch then brought the present appeal to this Court, Doc. 1, requesting review of ALJ LaChance's decision.

**B.    <u>April 2023 Hearing</u>**

At the hearing on April 5, 2023, the ALJ reviewed the record from the prior hearings and focused her attention primarily on the question of Ulitsch's exertional level from the onset of his alleged disability to the date he was found disabled. Tr. at 1648. The ALJ first heard testimony from Ulitsch about his physical symptoms, followed by testimony from vocational expert Joseph Young. Tr. at 1642-76. Ulitsch was represented by council throughout the hearing. Id.

The ALJ asked Young about a hypothetical person with the "same age, education, and work experience as [Ulitsch]" who was between fifty and fifty-

four years old, was able to carry twenty pounds occasionally and ten pounds frequently, and was limited to standing and walking for up to two hours per day and sitting for up to six hours per day. Tr. at 1661. Young testified that this hypothetical person could not perform the work of an electrician, which is classified as requiring a medium to very heavy RFC. Id. Young further stated that "the hypothetical calls for, really, a modified light RFC." Id. In response to the ALJ's question as to whether there would be jobs at the light work RFC level compatible with someone matching Ulitsch's description, Young stated that merchandise marker, routing clerk, and mailroom clerk would all be compatible jobs. Id.

The ALJ then asked Young to comment on any potential conflict between his testimony that a person in Ulitsch's position would be able to perform light work jobs and the fact that such a person was limited to two hours of standing and walking per day. Tr. at 1661-62. Young stated as follows:

> So within the [Dictionary of Occupational Titles] for light—a light RFC, it's generally—the weight lifted is—you know, it's the hypothetical is generally up to 20 pounds occasional, ten pounds frequently. However, the physical demands are generally—aside from being in excess of sedentary, it's usually considered that, you know, the amount of time walking and standing to be of a significant degree. Doesn't give a specific hour. But I certainly rely on my experience, and these are three jobs I've actually placed individuals into. And I testify, generally, the weight lifted is—in my experience, is no more than ten pounds frequently. And these jobs generally have a stand-sit option. So my experience, while

> they—generally, no more than four hours standing and walking for some of the jobs, is generally two hours, my experience, so—based on that stand-sit option. So I believe that that's where my experience may vary from the DOT to some degree, because it generally is a light RFC, but a modified RFC with the light limitation to only two hours standing or walking.

Tr. at 1662. Young stated he did not believe the stand/walk limitation would reduce the number of compatible jobs. Tr. at 1662-63.

Ulitsch's counsel then questioned Young about why the Dictionary of Occupational Titles ("DOT") characterizes jobs which can be performed seated, and which do not generally require lifting more than ten pounds, as "light work" rather than sedentary work. Tr. at 1665. Young replied that the DOT may need to be updated, having last been revised in 1991, and that in his professional experience jobs which once required more standing now offer a "stand-sit" option. Tr. at 1666-67. The following exchange took place between Young and Ulitsch's counsel:

> Q Okay. But it sounds—and please correct me if I'm wrong. It sounds like you're saying these jobs are kind of closer to sedentary than to the light as the DOT defines light, as they're performed today. That fair to—
>
> A That's fair to say. Yes. I mean, it's not at the sedentary level, in my experience, but it's certainly between—it would be between the two, in my experience.

Tr. at 1667.

**C.    <u>The ALJ's Decision</u>**

The ALJ assessed Ulitsch's claim under the five-step, sequential analysis mandated by 20 C.F.R. § 404.1520. Tr. at 1616-41. At step one, the ALJ found that Ulitsch had not engaged in substantial gainful activity since February 3, 2014, the alleged onset date. Tr. at 1622. At step two, the ALJ found that Ulitsch had the severe impairments of lumbar degenerative disc disease and obesity, as well as several additional non-severe impairments. <u>Id.</u> At step three, the ALJ found that none of Ulitsch's impairments, considered individually or in combination, qualified for any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. <u>Id.</u>; 20 C.F.R. § 404.1520(d) (2012).

The ALJ then found that Ulitsch had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), "allowing for lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking two hours in an eight-hour day; sitting six hours in an eight-hour day; no climbing ladders, ropes, and scaffolds; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling." Tr. at 1623. Relying on the testimony of the vocational expert, the ALJ concluded at step four that Ulitsch could not perform his past relevant work. Tr. at 1630.

At step five, the ALJ found that other jobs existed in the national economy that Ulitsch could perform, including "Merchandise Marker (DOT# 209.587-034, 140,000 jobs); Routing Clerk (DOT# 222.687-022, 120,000 jobs);

and Mailroom Clerk (DOT# 209.687-026, 15,000 jobs)." Tr. at 1631. The ALJ

considered Ulitsch's RFC, age, education, and work experience in conjunction

with the Medical-Vocational Guidelines (the "Grids"). Id.; see 20 C.F.R. § pt.

404, subpt. P, app. 2. If Ulitsch could perform the full range of light work, a

finding of "not disabled" would be directed by Medical-Vocational Rule

202.14. Tr. at 1631. Although Ulitsch could not perform all or substantially

all the requirements for light work, and in view of the vocational expert's

testimony on the extent to which Ulitsch's occupational base was eroded by

his physical limitations, the ALJ found that Ulitsch could still make a

successful adjustment to other work that exists in significant numbers in the

national economy. Id. The ALJ explained the discrepancy between the

vocational expert's evidence and the DOT on the question of Ulitsch's

stand/walk limitation by noting the expert testified that light work "can be

performed despite reduction in standing and walking" and based on the

expert's experience, "these jobs can be done with two hour stand and walk

abilities." Id. The ALJ concluded that a finding of "not disabled" was

appropriate.

## II.    STANDARD OF REVIEW

I am authorized to review the pleadings submitted by the parties and

the administrative record and enter a judgment affirming, modifying, or

reversing the "final decision" of the Commissioner. See 42 U.S.C. § 405(g).

That review is limited, however, "to determining whether the [Commissioner] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Commissioner's findings of fact so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. But her findings are not conclusive "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for her, not for the doctors or for the courts." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (cleaned up).

### III.  ANALYSIS

The Social Security Act defines "disability" for purposes of Title II as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner must follow a sequential five-step process. 20 C.F.R. § 416.920 (2012).

The claimant bears the burden at the first four steps to prove by a preponderance of the evidence that they are disabled. See Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001); Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996). Once a claimant has met their burden at step four to show that they are unable to do past work due to a significant limitation, the Commissioner then has the burden at step five to present evidence of specific jobs in the national economy that the claimant can still perform. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020). "If the applicant's limitations are exclusively exertional, then the Commissioner can meet her burden through the use of a chart contained in the Social Security regulations." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see 20 C.F.R. § 416.969 (2012).

In some cases, such as here, the Commissioner will not be able to meet her burden at step five solely using the Grids. Where a claimant's RFC falls

between exertional levels, the Grids are not dispositive, and the adjudicator must undertake additional inquiries. See Melican v. Saul, No. 18-cv-682-SM, 2019 WL 4254253 (D.N.H. Sept. 9, 2019) (citing Stephens v. Barnhart, 50 Fed. Appx. 7, 10 (1st Cir. 2002)).

Ulitsch challenges the Commissioner's decision by arguing the ALJ failed to provide any explanation for why she "applied one grid rule over another for an RFC finding which fell between two grid rules directing opposite results." Doc. 6-2 at 2-3, 5. Ulitsch's argument centers on the adequacy of the ALJ's explanation of her reliance on the vocational expert's testimony in concluding that a light work RFC was appropriate. Id. at 3 (citing Gross v. Colvin, 213 F. Supp. 3d 229, 233 (D. Mass. 2016) (holding that where an exertional level falls between two rules that would produce opposite disability findings, the ALJ must examine the degree the exertional capacity was reduced)). Ulitsch contends that if the ALJ had properly used the vocational expert's testimony to supplement the Grids, "the ALJ likely should have called the RFC sedentary since, in the end, the vocational witness testified that the occupations the ALJ relied upon did not require lifting more than 10 pounds and were 'closer to sedentary work than light work.'" Id. at 3.

To support his argument, Ulitsch relies on the Program Operations Manual System (POMS), which serves as the Social Security Administration's (SSA) interpretation of relevant regulations. Ulitsch

11

specifically relies on POMS § DI 25025.015(D), which explains how the ALJ must make a disability finding where the claimant's exertional capacity falls between Grid rules directing different conclusions. Ulitsch argues that the ALJ was required to apply the Grid rule that directed a finding of disability, or at a minimum explain why she did not. Doc. 6-2 at 5. Ulitsch's reasoning is that, where a claimant's exertional capacity falls between two Grid rules and the rules direct opposite results, the ALJ must apply the rule directing a finding of no disability where the claimant has "a slightly reduced capacity for the higher level of exertion," or the rule directing a finding of disability where the claimant has "a significantly reduced capacity for the higher level of exertion." POMS § DI 25025.015(D). Ulitsch contends that because the evidence supported a finding that his exertional capacity was "significantly reduced," a finding of disabled was warranted.

Ulitsch's argument is premised on an overly restrictive view of SSA policy in these situations. See Duffy v. Saul, No. 18-cv-12342-DJC, 2020 WL 871576, at *7 (D. Mass. Feb. 21, 2020) ("[T]his section of POMS, however, does not address every possible situation when a claimant's capacity falls between rules."). While it is true that POMS § DI 25025.015(D) applies to situations where the claimant's exertional capacity is either "slightly" or "significantly" below the higher exertional level, it does not offer guidance where a claimant's RFC falls squarely in the middle of the ranges.

12

Where, as here, the claimant's exertional capacity falls between RFC levels, Social Security Ruling (SSR) 83-12 provides relevant guidance. See SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). Where the "exertional level falls between two rules which direct opposite conclusions, i.e., 'Not disabled' at the higher exertional level and 'Disabled' at the lower exertional level," then the adjudicator examines the degree the exertional capacity was reduced. Id. If the capacity is "only slightly reduced," then its impact on the remaining occupational base may not warrant a finding of disabled. Id. In some cases, a claimant's exertional capacity may not reduce the total number of available jobs to such an extent as to warrant a finding of disabled. See 20 C.F.R. § pt. 404, subpt. P, app. 2, 200.00(b) ("[The] existence of such jobs for individuals whose remaining functional capacity or other factors do not coincide with the criteria of a rule must be further considered in terms of what kinds of jobs or types of work may be either additionally indicated or precluded.").

Furthermore, "where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work," SSR 83-12 advises an adjudicator to use the assistance of a vocational expert to determine the impact of the exertional capacity limitations on the claimant's occupational base. SSR 83-12, 1983 WL 31253 (Jan. 1, 1983); see Martin v. Barnhart, 240 Fed. Appx. 941, 946 (3d Cir. 2007) ("SSR 83-12 does not automatically dictate

a finding of disability where an individual is limited by a sit/stand option. Rather, SSR 83-12 indicates that a [vocational expert] should be consulted."); Guitierrez v. Barnhart, 109 Fed. Appx. 321 (10th Cir. 2004) (when there is a limit on the ability to stand or walk "[t]he ALJ should have solicited evidence from a vocational expert about plaintiff's ability to perform specific light jobs that may exist in significant numbers in the national economy"); Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002) ("[W]hen a claimant's exertional limitation falls between two grid rules, the ALJ fulfills his obligation to determine the claimant's occupational base by consulting a vocational expert regarding whether a person's profile could perform substantial gainful work in the economy.").

In consulting and relying on a vocational expert's testimony, the adjudicator may credit the vocational expert's opinion when it is based on their expertise and professional experience. Saia v. Barnhart, No. Civ.A.03-11989-RWZ, 2005 WL 152126, at *3 (D. Mass. Jan. 25, 2005). In the event of an apparent conflict between the vocational expert's testimony and the DOT, "the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [...] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2 (December 4, 2000). Reasonable explanations that "may provide a basis for relying on the evidence from the VE, rather than the DOT information,"

include "information about a particular job's requirements or about occupations not listed in the DOT [. . .], information obtained directly from employers, or from a [vocational expert's] experience in job placement or career counseling." Id.

Here, the ALJ followed the letter and spirit of SSR 83-12. Both parties acknowledge that Ulitsch's RFC determination does not fit neatly into the criteria for either light or sedentary work. The ALJ found that Ulitsch could lift or carry up to twenty pounds occasionally and ten pounds frequently, which meets the requirements of light work.[3] Tr. at 1623. However, Ulitsch could not perform the <u>full</u> range of light work, which requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983), because he was unable to stand or walk for more than two hours in an eight-hour day. Tr. at 1623. Accordingly, "to determine the extent to which these limitations erode

---

[3]     To the extent that Ulitsch argues the ALJ improperly relied on an "unsupported allegation that the record showed he could lift and carry more than 10 pounds," Doc. 10 at 2, I find that the ALJ's finding on this question was supported by substantial evidence. The ALJ extensively reviewed the medical record below detailing Ulitsch's physical abilities during the 2014 to 2018 period. She ultimately gave little weight to the New Hampshire Disability Determination Unit's medical reviewer who found that Ulitsch could only lift ten pounds occasionally and less than ten pounds frequently. Tr. 1629-30. The ALJ found that this opinion is "not consistent with the record documenting that the claimant can lift and carry over 10 pounds." Id.

the unskilled light occupational base," the ALJ sought the assistance of a vocational expert. Tr. at 1631. The ALJ relied on the vocational expert's expertise in finding that Ulitsch could still perform the jobs of merchandise marker (DOT# 209.587-034, 140,000 jobs), routing clerk (DOT# 222.687-022, 120,000 jobs), and mailroom clerk (DOT# 209.687-026, 15,000 jobs). Id.

Despite Ulitsch's argument that his exertional capacity was "significantly reduced" and that the ALJ was thus required to apply a rule directing a finding of disabled, Doc. 10 at 2, SSR 83-12 falls short of mandating any particular outcome in cases where a claimant falls in the middle of two Grid rules. It merely provides that a significant reduction in a claimant's exertional capacity could justify a finding of disabled. See SSR 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). Courts that have considered SSR 83-12 have held that ALJs can find claimants capable of performing a limited range of work in a given exertional capacity and elicit vocational expert testimony to determine whether there are jobs the claimant can still perform with those limitations. See, e.g., Moore v. Apfel, 216 F.3d 864, 870 (9th Cir. 2000); Martin, 240 Fed. Appx. at 946; Gravel v. Barnhart, 360 F. Supp. 2d 442, 448 (N.D.N.Y. 2005) ("[SSR 83-12] does not require the ALJ to determine whether a claimant's occupational base is more closely related to light or sedentary work capacity."). Contrary to Ulitsch's suggestion that the ALJ should have found a sedentary RFC given Ulitsch's two-hour stand/walk

limitation, Doc. 6-2 at 3, courts have held that ALJs are not mechanically bound to obtain certain results where the limitations fall between two exertional levels. See Saeed v. Berryhill, No. 16-cv-11928-ADB, 2018 WL 1243953, at *11 (D. Mass. Mar. 9, 2018) ("This Court does not hold that a two-hour standing/walking limitation necessitates a RFC of sedentary work, or that the mere inconsistency between such a standing/walking limitation and a lift/carry capacity requires a remand."); Baillargeon v. Berryhill, 359 F. Supp. 3d 172, 181 (D.N.H. 2019) ("[A]n inability to walk/stand for six hours does not necessarily preclude a person from having the RFC to perform light work.").

While there is some non-binding authority reaching a different result, with courts noting a potential conflict between a two-hour standing/walking limitation and a light work RFC determination, see, e.g., Saeed, 2018 WL 1243953, at *10, the mere presence of a conflict is not dispositive in these cases. Indeed, SSA policy dictates that an ALJ obtain a "reasonable explanation for any conflicts" between a vocational expert's evidence and the DOT. SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000).

Ulitsch's first appearance before this Court is instructive. There, the Court ordered a remand after it found the vocational expert at his first hearing had not provided a reasonable explanation for the conflict between the RFC designation and the DOT job descriptions. See Ulitsch, 2019 WL

17

4686776, at *4 (finding the vocational expert "offered no explanation for how or why the 'light work' jobs she previously identified for Ulitsch could still be performed by a person who cannot stand or walk for more than two-hours in a workday, for example, by explaining the amount of walking, standing, or sitting required to perform each job"). Here, by contrast, the vocational expert explained that despite the apparent conflict, the light work jobs he identified could still be done by someone with a two-hour stand/walk limitation because many more employers now provide stand-sit options than when the DOT was initially drafted and revised. Tr. at 1662. The ALJ found this testimony supported by "his experience, including placing people in jobs[.]" Tr. at 1631. The ALJ acknowledged that "the vocational expert's testimony is inconsistent with the information contained in the [DOT]," but stated in her decision that "there is a reasonable explanation for this discrepancy," namely that "these jobs can be performed despite reduction in standing and walking." Id.

I can find no error in the procedure followed or in the ALJ's findings. To the extent that Ulitsch contends that the evidence before the ALJ could have supported a sedentary RFC finding, this alone is an insufficient basis for concluding that the ALJ's decision was unsupported by substantial evidence, for I "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by

substantial evidence," as it is here. Tsarelka v. Sec'y of Health & Hum. Servs., 842 F.2d 529, 535 (1st Cir. 1988).

### IV.    CONCLUSION

For the foregoing reasons, Ulitsch's motion to reverse the decision of the Commissioner, Doc. 6, is denied, and the Commissioner's motion to affirm the decision, Doc. 8-1, is granted. The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

March 4, 2025

cc:    Counsel of Record